IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA


DENISE GRUNINGER              :        CIVIL ACTION
                              :
              v.              :
                              :
AMERICA'S SERVICING COMPANY   :        No. 08-572


MEMORANDUM AND ORDER

McLaughlin, J.                          February 22, 2010


        The pro se plaintiff,[1] Denise Stewart (formerly Denise
Gruninger), brought this action involving a mortgage loan
serviced by the defendant Wells Fargo Bank, N.A., d/b/a America's
Servicing Company ("ASC").  After the plaintiff failed to pay her
2006 property taxes, she requested that the defendant pay those
taxes for her.  The defendant then created an escrow account to
cover the repayment of the delinquent taxes and to provide a
balance for the plaintiff's future property taxes.  The
plaintiff's claims arise out of the imposition of this escrow
account.  The defendant moves for summary judgment on all of the
plaintiff's claims.  The Court grants the defendant's motion.

_____

        [1]  The plaintiff was originally represented by counsel in
this matter, but her attorney obtained leave to withdraw on
October 15, 2008.

I.    <u>The Undisputed Facts</u>

The defendant provides a statement of the undisputed material facts in its motion for summary judgment.  See Def.' Mot. at 5-10.  The facts are supported by the exhibits attached to the motion, an affidavit from Jennifer L. Robinson ("Robinson Aff."), a default litigation specialist for the defendant, and the exhibits attached that affidavit.  The plaintiff's response does not provide a statement of the undisputed facts or directly refute the defendant's facts, unless otherwise noted.

A.    <u>The Loan Transaction</u>

The plaintiff entered into the mortgage loan at issue on December 6, 2006.  The original lender was Atlantic Pacific Mortgage Corporation, and the original servicer was GMAC.  Under the terms of the loan, the plaintiff's monthly payments were $1,347.00.  <u>See</u> Def.'s Mot., Ex. B, Mortgage Note, and Ex. C, Mortgage Agreement.

The plaintiff also signed an escrow waiver at the closing of the loan.  Under the escrow waiver, the defendant waived the usual requirement that a borrower pay into an account providing for the escrow of, among other things, property taxes, and the plaintiff agreed to pay her property taxes on her own.  <u>See</u> Def.'s Mot., Ex. D, Escrow Waiver.  The escrow waiver, however, provided that the "[f]ailure to pay [items such as

taxes] when due . . . shall give Lender the right to reinstate
the requirement that these items be paid to Lender to be placed
in escrow and paid monthly for the remaining term of the loan."
See id. The plaintiff paid her 2005 school and county taxes at
closing. See Def.'s Mot., Ex. E, HUD-1 Settlement Statement at
lines 1205 and 1306, and Ex. F, Real Estate Tax Certification.

Wells Fargo Bank, N.A. ("Wells Fargo")[2] currently
services the loan under its trade name, ASC. It took over
servicing the plaintiff's loan from GMAC in October 2006. See
Robinson Aff. at ¶ 7. See also Def.'s Mot., Ex. I, ASC's "Hello
Letter," and Ex. J, GMAC's "Goodbye Letter."[3]


B.    The Escrow Account

The plaintiff failed to pay her 2006 township and
school taxes. See Def.'s Mot., Ex. G, Deposition of Denise
Stewart at 90:5-91:10 ("Stewart Dep."). The defendant became
aware that the plaintiff's 2006 taxes were delinquent in June
2007. See Robinson Aff. at ¶ 13. The defendant sent the

_____

[2]    The complaint names Wells Fargo Home Mortgage ("WFHM")
as a defendant, although no specific causes of action are
asserted against it. See Am. Compl. ¶ 6. WFHM, however, no
longer exists as an independent entity and, instead, functions as
an unincorporated division of Wells Fargo. See Robinson Aff. at
¶ 6.

[3]    The plaintiff disputes the defendant's right to service
her loan. See Pl.'s Opp'n at 7-9. The Court addresses this
issue in Part II.A.

plaintiff a letter dated June 22, 2007, notifying the plaintiff of her property tax arrears.  <u>See</u> Def.'s Mot., Ex. L.  The letter stated that, if the plaintiff had not already paid the delinquent taxes, the defendant would assist in paying the full amount of past taxes due.  The letter provided, however, that if the defendant did pay the plaintiff's delinquent taxes, "[a]n escrow account will be established on your behalf for the collection of the advance, as well as all future tax bills.  Your monthly mortgage payment will increase to repay the advance and to collect for a monthly escrow deposit."  <u>Id.</u>

After receiving the defendant's letter, the plaintiff contacted the defendant and asked it to pay her delinquent taxes.  <u>See</u> Stewart Dep. at 90:5-9.  The payment of future taxes was not discussed during the call.  <u>See</u> <u>id.</u> at 90:17-19.  The defendant paid the plaintiff's delinquent 2006 taxes and established an escrow account for the plaintiff.  <u>See</u> Robinson Aff. at ¶ 17 and Ex. 6.  The defendant also paid the plaintiff's 2007 taxes, which were unpaid and had been due on March 1 and August 1, 2007.  <u>See</u> <u>id.</u> at ¶ 20-21 and Exs. 2-5.

The defendant provided the plaintiff with an escrow account statement on August 16, 2007.  <u>See</u> Def.'s Mot., Ex. M. The statement reflected the payment of the plaintiff's delinquent 2006 taxes and the payment of the plaintiff's 2007 taxes in a total disbursement amount of $5,619.09, which could be repaid in

monthly amounts of $222.57.  See id.  It also reflected the
amounts needed to establish a proper escrow balance under RESPA
and under the specific terms of the plaintiff's mortgage and
projected an escrow shortage of $6,509.33.  A table entitled
"Escrow Account Projections" was provided to show the
calculations for this shortage.  See id.  The defendant gave the
plaintiff the option of paying the shortage in monthly payments
of $542.44 or in full.  It informed the plaintiff that, if she
chose not to pay in full, her adjusted total monthly mortgage
payment, which included the monthly escrow payment of $222.57 and
the monthly escrow shortage payment of $542.44, would be
$2,112.45.  See id.

    C.   The Plaintiff's Dispute Over the Escrow Account

      The  plaintiff failed to include her escrow payment and
escrow shortage payment in her September 2007 payment and paid
only $1,347.44, her original monthly payment amount.  See id. at
¶ 43 and Ex. 17.  The defendant accepted the payment and applied
it to the plaintiff's principal and interest.  See id. at ¶ 44
and Ex. 17.  The plaintiff again failed to include the amounts
due under her escrow account in her October 2007 payment.  See
id. at ¶ 45 and Ex. 17.  The defendant also accepted this payment
and applied it to plaintiff's principal and interest.  See id. at
¶ 46 and Ex. 17.

When the plaintiff failed to include the escrow funds in her payment for November 2007, the defendant applied that payment to the plaintiff's escrow delinquency. <u>See</u> <u>id.</u> at ¶ 48-50 and Ex. 17.  After that payment, the defendant refused to accept any payments that were not sufficient to reinstate the loan and informed the plaintiff of that decision in a letter dated December 18, 2007.  <u>See</u> Def.'s Mot., Ex. S.  The defendant also began reporting the plaintiff as delinquent to credit reporting agencies.  <u>See</u> Robinson Aff. at ¶ 53.; <u>see also</u> the plaintiff's Experian credit report, attached as an exhibit to the plaintiff's opposition.

The plaintiff sent letters to the defendant on November 9, November 28 and December 26.  Those letters, among other things, disputed the creation of the escrow account and denied the plaintiff's responsibility to pay the increased monthly payment.  The defendant responded to the plaintiff's letters on several occasions.  Its last response to the plaintiff's letters was dated on February 4, 2008, one day before the plaintiff filed her complaint in this action.  <u>See</u> Robinson Aff. ¶¶ 29-33 and Ex. 7-15.

The plaintiff did not make a full payment on her account from November 2007 until mid-2009, when she entered into a loan modification agreement with the defendant's loss-mitigation department.  <u>See</u> <u>id.</u> at ¶ 54 and Ex. 16.

II.  Analysis

The plaintiff claims that because she never agreed to the creation of the escrow account for the payment of future taxes, she was not obligated to pay the corresponding increased amount in her monthly payments.[4]  She brings 9 counts against the defendant arising out of the imposition of the escrow account.[5]

The defendant moves for summary judgment on all of the plaintiff's claims.  The defendant argues the plaintiff agreed to the creation of the escrow account for future taxes when she requested that the defendant pay certain delinquent past property taxes.  The defendant also argues that the terms of the plaintiff's mortgage itself allowed for the creation of the escrow account, with or without the plaintiff's consent.  The defendant maintains that it acted properly throughout the

_____

[4]     The plaintiff filed a sur-reply in opposition to the defendant's motion.  Although the Court does not permit the filing of sur-replies without the Court's approval, the Court has reviewed the plaintiff's sur-reply and finds that it does not affect its decision.

[5]     The amended complain lists the following counts against the defendant:  (1) violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, et seq. ("FDCPA"), (2) violations the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601, et seq. ("RESPA"), (3) breach of contract, (4) defamation, (5) tortious interference with contract, (6) violations of the Pennsylvania Unfair Trade Practices and Consumer Protection Laws, 73 P.S. § 201.1, et seq. ("UTPCPL"), (7) violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681, et seq. ("FCRA"), (8) violations of the Fair Credit Extension Uniformity Act, 73 P.S. § 2270.1 et seq ("FCEUA"), and (9) punitive damages.

servicing of the loan and that all of its actions were justified
under the terms of the mortgage note and the mortgage agreement.[6]

    A.   <u>The Defendant's Right to Service the Loan</u>

       The plaintiff maintains that there is a material issue
of fact over whether the defendant has the right to service her
loan. <u>See</u> Pl.'s Opp'n at 7-9. The defendant, however, has
produced a sworn affidavit and several documents showing that it
has the right to service the loan, and the plaintiff has
submitted no additional evidence calling the defendant's right to
service her loan under question.

       The defendant has serviced the plaintiff's loan since
October 1, 2006. <u>See</u> Robinson Aff. at ¶ 7. After closing, the
plaintiff's loan was transferred to the Morgan Stanley Mortgage
Loan Trust 2006-1AR ("Morgan Stanley"). <u>See</u> Robinson Aff., ¶ 4.
Morgan Stanley granted Wells Fargo the right to service its loans
in an "Omnibus Assignment, Assumption and Recognition Agreement"

---

    [6]   A party moving for summary judgment must show that
there is no genuine issue of material fact and that judgment is
appropriate as a matter of law. <u>See</u> Fed. R. Civ. P. 56(c). The
Court considers the evidence in the light most favorable to the
non-moving party. <u>See</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S.
242, 256 (1986). That party's allegations and denials,
unsupported by facts of record, do not create an issue of
material fact sufficient to defeat summary judgment. <u>See</u> Fed. R.
Civ. P. 56(e); <u>Anderson</u>, 477 U.S. at 248-49. Although pro se
filings are entitled to liberal construction, the plaintiff must
still set forth facts sufficient to survive summary judgment.
<u>Haines v. Kerner</u>, 404 U.S. 519, 520-21 (1972); <u>Zilch v. Lucht</u>,
981 F.2d 694, 694-96 (3d Cir. 1992).

dated October 1, 2006.  See id. at ¶ 8 and Ex. 1.  On that date,
the defendant took over the servicing of the plaintiff's loan
from GMAC.  See id. at ¶ 7.  See also, Def.'s Mot., Exs. I-J.

Although the plaintiff argues that no single document
produced by the defendant shows that her specific mortgage is in
the pool of mortgages owned by Morgan Stanley and serviced by the
defendant, questions alone are not sufficient to defeat a motion
for summary judgment.  The plaintiff has produced no evidence
calling Morgan Stanley's ownership or the defendant's servicing
rights into question.  Nor has the plaintiff identified any other
mortgage holder or servicer that has claimed ownership of the
loan or tried to collect her loan payments.

Because there is no genuine issue of fact as to whether
the defendant has the right to service the plaintiff's loan, the
Court now addresses the claims in the plaintiff's amended
complaint.


    B.    FDCPA

Under count I of the amended complaint, the plaintiff
alleges that the defendant violated the FDCPA.  The FDCPA
provides a remedy for consumers who have been subjected to
abusive, deceptive or unfair debt collection practices.  Pollice
v. Nat'l Tax Funding, L.P., 225 F.3d 379, 400 (3d Cir. 2000).
The provisions of the FDCPA generally apply only to debt

collectors.  Id. at 403.  The statute defines a "debt collector" as any person who attempts to collect debts "owed or due or asserted to be owed or due another."  See 15 U.S.C. § 1692a(6). The definition explicitly excludes debts that were not in default at the time they were obtained.  15 U.S.C. § 1692a(6)(F)(iii).

Neither GMAC's "Goodbye Letter" or the defendant's "Hello Letter" state that the plaintiff's loan was in default at the time the defendant obtained the loan.  See also Def.'s Mot., Ex. I, J.  Nor has the plaintiff produced any argument or evidence to show that the debt was in default when it was obtained by the defendant.  The plaintiff, therefore, has not met its burden in establishing that there is a material issue of fact as to whether the defendant qualifies as a debt collector subject to liability under the FDCPA.

C.    RESPA

Under count II of the amended complaint, the plaintiff alleges that the defendant violated § 2605(e) of RESPA by failing to respond to the plaintiff's "qualified written requests" ("QWRs").  A QWR is defined under RESPA as a written correspondence that includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.  See 12

10

U.S.C. § 2605(e)(1)(B). Section 2605(e)(1) requires the servicer of a mortgage loan to acknowledge receipt of a QWR from a borrower within 20 days, excluding Saturdays, Sundays, and public holidays.

Section 2605(e)(2) directs the servicer to provide the borrower with a substantive letter within 60 days of receipt of the QWR, excluding Saturdays, Sundays, and public holidays. The servicer is required to conduct an investigation into the borrower's request. If the servicer determines that the account is in error, the servicer must make appropriate corrections in the borrower's account and notify the borrower of the correction in writing. See 12 U.S.C. § 2605(e)(2)(A). If the servicer determines the account is not in error, the servicer must provide the borrower with a written explanation or clarification stating the reasons why the servicer believes the borrower's account is correct. See 12 U.S.C. § 2605(e)(2)(B).

The plaintiff sent letters on November 9, 28 and December 26, 2007. See Am. Compl. ¶ 63. The plaintiff's November 9, 2007 letter: (1) requested rescission of the defendant's charge of late fees, (2) disputed the escrow amounts as set forth in the escrow account statement, (3) disputed the escrow amounts paid by the defendant, (4) threatened litigation, and (5) enclosed a check in the amount of $1,570.01. See Robinson Aff., Ex. 7. The defendant found that no corrections to

the plaintiff's account were required and responded in a letter dated November 21, 2007. See id., Ex. 8. In that response, the defendant described the terms of the plaintiff's loan in relation to late fees and, as a courtesy, offered to refund one late fee. The letter also itemized the tax payments made on the plaintiff's behalf. Additionally, it explained that the escrow account was created pursuant to the defendant's June 22, 2007, letter, and was prompted by the plaintiff's request for the defendant to pay her delinquent property taxes. See id.

The plaintiff's November 28, 2007 letter: (1) disputed the application of her $1,570.01 payment to the payment of escrow and late fees, (2) alleged that the defendant assessed late fees in breach of the mortgage, (3) alleged that the defendant listed an erroneous outstanding balance on the plaintiff's November loan statement, (4) asked for the address of the person for receiving civil process for commencing litigation, (5) insisted that the defendant apply all mortgage payments as provided in the mortgage agreement, and (6) requested a new mortgage statement reflecting the "proper" application of her mortgage payments. See Robinson Aff., Ex. 9. The defendant again determined that no corrections to the plaintiff's account were required and responded in a letter dated December 20, 2007. See id., Ex. 10. The response affirmed the current mortgage payment amount, explained the disbursement of the $1,570.01 payment, enclosed a detailed pay

history, and provided the plaintiff with an address for the service of process.  See id.

The plaintiff's letter dated December 26, 2007, renewed the objections made in the first two letters and requested that the defendant cancel her escrow account entirely.[7]  The letter also included two checks in the amount of $1,570.01.  The defendant first sent a letter acknowledging receipt of the plaintiff's QWR on January 24, 2008, within the 20 days required under § 2605(e)(1).  See id., Ex. 12.  The defendant then sent a second letter to the plaintiff on January 25, 2008, explaining that her two payments of $1,570.01 had been returned as insufficient to reinstate the loan.  See id., Ex. 13.  The defendant sent a third letter on January 30, 2008, notifying the plaintiff that her request to cancel her escrow account would not be granted because (1) the plaintiff's loan had 30-day late periods over the last twelve months, and (2) the plaintiff's escrow balance was negative.  See id., Ex. 14.  Finally, the defendant sent a fourth letter on February 4, 2008, notifying the plaintiff that any remaining claims would be addressed at litigation.

The defendant, therefore, responded to all of the plaintiff's letters and, among other things, provided detailed

_____

[7]     The plaintiff also disputed an erroneous charge for hazardous insurance, which the defendant later corrected.  See Robinson Aff., ¶¶ 40-42 and Ex. 11.

explanations as to why it had created the escrow account, why it refused to accept further insufficient payments, and why it would not cancel the plaintiff's escrow account.  The plaintiff has provided no additional evidence or argument that would show that the defendant's responses are insufficient to comply with § 2603(e) of RESPA.

        D.    <u>Breach of Contract</u>

        Under count III of the amended complaint, the plaintiff alleges that the defendant (1) failed to accept and apply her payments pursuant to the terms of her mortgage, (2) failed to act in good faith and with fair dealing in applying payments, corresponding with the plaintiff, and reporting the status of the note and mortgage, (3) breached a modification agreement dated November 9, 2008, (4) breached an oral promise to accept payments for past due payments only, and (5) acted with malice and total and utter reckless disregard for the plaintiff's reputation and well-being by falsely informing credit agencies and others that the "mortgage is late, in default, or otherwise [in]accurate."

        First, under the plain terms of the mortgage, the defendant was permitted to accept partial payments, apply the payments or refuse them as insufficient.  The mortgage agreement provided that the defendant could accept partial payments without waving any of its rights.  <u>See</u> Def.'s Mot., Ex. C. at ¶ 1.  The

defendant's acceptance of the partial payments in September, October and November 2007 did not affect its rights under the mortgage. Furthermore, the mortgage provided that if more than one periodic payment is outstanding, the defendant was permitted to apply any payment received from the borrower to the repayment of those delinquent payments. See Def.'s Mot., Ex. C at ¶ 2. The defendant, therefore, acted in accordance with the terms of the mortgage when it applied the plaintiff's November payment to the amounts due in September and October. Finally, the mortgage agreement also permitted the defendant to "return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current." Id. The defendant, therefore, acted within its rights under the mortgage when it returned the defendant's further payments as insufficient to reinstate the loan.

Second, the plaintiff has not established a genuine issue of fact as to whether the defendant failed to act in good faith in applying the payments, corresponding with the plaintiff, or reporting to the credit agencies on the status of the note or mortgage. Pennsylvania courts have "refused to impose a duty of good faith which would modify or default the legal rights of a creditor." Creeger Brick and Bldg. Supply Inc. v. Mid-State Bank and Trust Co., 560 A.2d 151, 154 (Pa. 1989). Any implied duty of good faith, therefore, "does not compel a lender to surrender

rights which it has been given by statute by the terms of its contract." Id.

As stated above, the plain terms of the mortgage gave the defendant the right to apply the plaintiff's payments. Additionally, the defendant has presented evidence that its correspondence with the plaintiff was truthful and accurate, and the plaintiff has not presented any evidence of a false or inaccurate statement.  Finally, the defendant reported the plaintiff's account as delinquent only after she failed to pay her full monthly payments for three months.  The plaintiff has not produced evidence that any action taken by the defendant was outside of its legal rights under the mortgage.

Third, the plaintiff has not established a genuine issue of fact as to whether her November 9, 2007, letter constituted a loan modification agreement.  The plaintiff's letter proposed that the defendant would manifest its agreement to remove any shortage from the plaintiff's escrow account by accepting and cashing the payments enclosed with the letter.  See Robinson Aff., Ex. 7.  Although the defendant did cash those payments, the plain language of the mortgage agreement requires that any agreement by the defendant to waive the plaintiff's obligation to pay funds under escrow may be given only in writing.  See Def.'s Mot., Ex. C. at ¶ 3.  The plaintiff has produced no evidence showing that the defendant confirmed the

plaintiff's loan modification request in writing as required under the mortgage agreement.

Fourth, the plaintiff has not established a genuine issue of fact as to whether the defendant made an oral promise to accept payments for past due taxes only. The plaintiff has presented no evidence of an oral promise made by the defendant at any time.

Finally, the plaintiff has not submitted evidence to create a genuine issue of fact as to whether the defendant reported inaccurate information about the plaintiff's mortgage to the credit agencies or others. The defendant reported the plaintiff's account as delinquent after she failed to pay her total adjusted mortgage payments for three months. <u>See</u> Robinson Aff., ¶ 53. As discussed more fully below, the plaintiff has provided no evidence to show that this information, or any other information reported by the defendant, was untrue.

E.    <u>Defamation</u>

Under count IV of the amended complaint, the plaintiff alleges that the defendant maliciously and falsely published false information about the plaintiff to credit reporting agencies and others. Under Pennsylvania law, a plaintiff bringing a defamation claim must prove: (1) the defamatory character of the communication, (2) its publication by the

defendant, (3) its application to the plaintiff, (4) the understanding by the recipient of its defamatory meaning, (5) the understanding by the recipient of it as intended to be applied to the plaintiff, (6) special harm resulting to the plaintiff from its publication, and (7) abuse of a conditionally privileged occasion.  See Acumed LLC v. Advanced Surgical Servs., Inc., 561 F.3d 199, 227 (3d Cir. 2009) (citing 42 Pa. C.S. § 8343(a)). Truth is an absolute defense to a claim for defamation.  See 42 Pa. C.S. § 8343(b).

The plaintiff has failed to provide evidence of a false, defamatory statement published by the defendant to a credit agency or others.  The defendant charged the plaintiff the amounts allowed under RESPA and the plaintiff's mortgage note and agreement to cover her escrow shortage.  See Def.'s Mot. at 16-20 and Ex. M.[8]  The plaintiff has presented no evidence to show that these amounts were incorrectly calculated under her mortgage or under RESPA.  The plaintiff then failed to pay her total mortgage payments for three months.  Because of this failure to pay her payments in full, the defendant reported the plaintiff's account as delinquent.  The plaintiff has provided no evidence to show that such a statement was untrue.  Nor has the plaintiff

---

[8]    The defendant has described in detail the process by which it calculated that amount.  See Def.'s Mot. at 16-20 and Ex. M.

presented evidence of any other false information provided by the
defendant to the credit agencies or others.

     F.    <u>Tortious Interference with Contract</u>

       Under count V of the amended complaint, the plaintiff
alleges that the defendant intentionally and negligently
interfered with her contractual agreements with the holder and
owner of the mortgage agreement and loan.  Under Pennsylvania
law, a plaintiff must establish the following to prove a claim
for tortious interference with contract:  (1) the existence of a
contractual, or prospective contractual relation between the
plaintiff and a third party, (2) purposeful action on the part of
the defendant, specifically intended to harm the existing
relation, or to prevent a prospective relation from occurring,
(3) the absence of privilege or justification on the part of the
defendant, and (4) the occasioning of actual legal damage as a
result of the defendant's conduct.  <u>See</u> <u>Crivelli v. General
Motors Corp.</u>, 215 F.3d 386, 394 (3d Cir. 2000).

       Even assuming that the loan holder would qualify as a
third party with whom the plaintiff has a contractual
relationship, the plaintiff has not identified any purposeful
action on the part of the defendant to harm the relationship
between the plaintiff and the loan holder.  The defendant
serviced the loan under an agreement between Wells Fargo and

Morgan Stanley. <u>See</u> Robinson Aff. at ¶ 8 and Ex. 1. The defendant's responsibilities as servicer of the loan included the collection of principal, interest and escrow payments from the plaintiff. <u>See id.</u>, ¶ 9. The defendant has submitted evidence showing that, in paying the plaintiff's delinquent taxes, setting up an escrow account for the payment of future taxes, accepting and applying the plaintiff's payments, and reporting the plaintiff's loan as delinquent after she failed to pay her monthly payments in full, it acted in compliance with the mortgage agreement and in the interest of the loan holder. The plaintiff has not presented the Court with any action taken by the defendant that was in violation of the mortgage agreement. Nor has she provided evidence showing that the defendant's actions were not justified under its contract with the loan holder.

       G.    <u>UTPCPL</u>

       Under count VI of the amended complaint, the plaintiff alleges that the defendant violated the UTPCPL by (1) demanding inaccurate payments, (2) intentionally confusing or misleading the plaintiff, and (3) improperly notifying the plaintiff that her home could be foreclosed upon in an effort to confuse and deceive the plaintiff into paying inaccurate and invalid payments.

Although the plaintiff does not cite which provision of the UTPCPL that she believes the defendant violated, the Court will assume that the plaintiff is alleging violations under the UTPCPL's catch-all provision, 73 P.S. § 201-2(4)(xxi). This section provides that a person violates the UTPCPL by engaging in any fraudulent or deceptive conduct which creates a likelihood of confusion or misunderstanding.

First, as already established, there is no genuine issue of fact as to whether the payments charged by the defendant were inaccurate. Second, the plaintiff has provided no evidence of an intentionally confusing or misleading statement made by the defendant at any point in establishing the escrow account or in responding to the plaintiff's letters disputing her increased monthly payments.

Finally, the plaintiff has produced no evidence showing that the defendant's threats of foreclosure were made in an effort to confuse and deceiver her. The mortgage agreement provides the defendant with the right to do "whatever is reasonable or appropriate to protect the Lender's interest in the property and rights under the Security Instrument" upon the borrower's failure to perform under the agreement. See id., Ex. C, ¶ 9. The plaintiff herself testified that under the terms of the mortgage, if a borrower failed to make monthly payments, the property would be subject to foreclosure. See Stewart Dep.,

56:7-15.  The plaintiff has produced no evidence to show that the defendant's warnings of foreclosure were unreasonable to protect the lender's interests, much less evidence that such warnings were made in an effort to deceive or confuse the plaintiff.

      H.    <u>FRCA</u>

      Under count VII of the amended complaint, the plaintiff alleges that the defendant (1) falsely reported the amounts due under the loan to credit reporting agencies and (2) failed to remedy inaccurate reports after receiving notice that the information was inaccurate.

      The plaintiff's first claim under the FCRA fails as a matter of law because there is no private cause of action under the FCRA for falsely reporting credit information.  Section 1681s-2(a) creates a duty for furnishers of information to credit agencies to furnish accurate information only.  <u>See</u> 15 U.S.C. § 1681s-2(a).  Sections 1681s-2(c) and (d), however, expressly limit the enforcement of § 1681s-2(a) to certain federal agencies and state and federal officials.  Several courts have agreed with this reading of the FCRA.  <u>See, e.g.</u>, <u>Krajewski v. Am. Honda Fin. Corp.</u>, 557 F. Supp. 2d 596, 608 (E.D.Pa. 2008).

      In her second claim under the FCRA, the plaintiff has produced no evidence to show a genuine issue of fact as to whether the defendant failed to investigate a dispute related to

her account.  The United States Court of Appeals for the Third
Circuit has not determined whether relevant section of the FCRA,
§ 1681s-2(b), creates a private cause of action for borrowers
like the plaintiff.  Assuming that it does, however, the
plaintiff has established no genuine issue of fact as to whether
the defendant complied with § 1681s-2(b).

Section § 1681s-2(b) creates a duty for a furnisher of
information to investigate any dispute brought to its attention
by a credit ratings agency.  The plaintiff has not provided
evidence that would show either that the defendant reported her
account inaccurately or that the defendant failed to investigate
the disputed charge upon notification from the credit agency of
the dispute.  In fact, the defendant has provided ample evidence
that it investigated the plaintiff's disputes over her loan on
several occasions.  See Robinson Aff., Exs. 8, 10, 12-14.


I.    FCEUA

Under count VIII of the amended complaint, the
plaintiff alleges that the defendant also violated the FCEUA by
violating the FCRA.  She then asserts the same allegations under
this count that she asserts under count VII.  The Court grants
summary judgment for the defendant on the plaintiff's FCEUA claim
because (1) the Court has already granted summary judgment for
the defendant on the plaintiff's FCRA claim, and (2) the

plaintiff has produced no evidence that the defendant reported
false information to a credit agency.[9]


     J.    Punitive Damages

Under count IX of the amended complaint, the plaintiff
requests punitive damages. Because the Court has granted summary
judgment for the defendant on all of the plaintiff's claims,
there is no surviving claim for which punitive damages could be
available.


## III. Conclusion

For the reasons stated above, the defendant's motion
for summary judgment on all claims is granted.[10]


An appropriate Order shall issue separately.

---

[9]The Court notes that, although the FCEUA does expressly
provide that a violation of the FDCPA is a per se violation of
the FCEUA, no such provision is made for the FCRA. See 73 P.S.
§ 2270.4(a). Because the Court grants summary judgment for the
defendant on other grounds, however, it does not reach the issue
of whether a violation of FCRA is also a violation of the FCEUA.

[10]   The defendant provided several additional arguments in
support of its motion for summary judgment. Because the Court
found sufficient grounds to grant summary judgment for the
defendant for the reasons stated above, the Court does not reach
the merits of these other arguments.